**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 15-61-DLB-JGW**

**DEBORAH MEADOWS**                                                                        **PLAINTIFF**

vs.                                    **MEMORANDUM ORDER**

**CITY OF DRY RIDGE, et al.**                                      **DEFENDANTS**

\*\*\*    \*\*\*    \*\*\*    \*\*\*    \*\*\*    \*\*\*

**I.**       **INTRODUCTION**

Defendant City of Dry Ridge ("Dry Ridge"), Defendant Clay Crupper in his individual capacity, and Defendant Clay Crupper in his official capacity (collectively "Defendants") have moved to enforce the settlement agreement with Plaintiff Deborah Meadows. (Doc. # 27). Subsequently, Plaintiff filed a Motion for a Hearing or Oral Argument Regarding Motion to Enforce Settlement. (Doc. # 36). Both motions are fully briefed (Docs. # 34, 35, and 37) and ripe for the Court's review.

**II.**       **FACTUAL AND PROCEDURAL BACKGROUND**

On April 29, 2015, Plaintiff filed the instant action (Doc. # 1) asserting claims of First, Fourth, and Fourteenth Amendment violations arising out of her arrest and dispute with Defendants concerning her water bills. (Doc. # 34 at 1).

On November 22, 2016, Plaintiff and Defendants participated in a settlement conference with Magistrate Judge Wehrman. (Doc. # 23). Although they were unable to reach an agreement, the parties agreed to continue negotiations. *Id.* On March 23, 2017,

after discussing the matter with Plaintiff and acting with her supposed authorization Plaintiff's counsel[1] sent Defendants' counsel an e-mail which reads in relevant part:

> This e-mail is to confirm our settlement in Meadows v. Dry Ridge, et al., 15-cv-61, for a total of $50,000 - $5,000 going to Ms. Meadows and $45,000 going to O'Hara, Taylor, Sloan & Cassidy for fees and costs. As agreed, there will be no confidentiality provision connected to this settlement. We will provide you with our firm's W-9 in the near future.

(Doc. # 27 at Exhibit A). Within an hour, Defendants' attorney responded, agreeing and saying that they would "draft and send a Release and AOD." *Id.* That same day, Magistrate Judge Wehrman issued an Order stating that the case had been settled. (Doc. # 24).

However, Plaintiff later informed her attorney that she no longer wanted to accept the settlement. (Doc. # 34 at 2). Plaintiff claimed that "she felt pressured to settle and did not believe she would be committed to a settlement until she signed an agreement." *Id.* Both parties agree that Plaintiff never signed a written agreement; however, Defendants maintain that the March 23, 2017 e-mail exchange created an enforceable settlement. (Doc. # 27 at 4). Accordingly, on April 21, 2017, Defendants moved to enforce the settlement agreement. (Doc. # 27). Plaintiff denies the existence of an enforceable settlement (Doc. # 34), and on June 14, 2017, requested an evidentiary hearing to resolve an alleged factual dispute as to whether or not she knowingly and voluntarily accepted the terms of settlement. (Doc. # 36).[2]

---

[1] The email was sent by Megan Fields, who was representing Plaintiff at the time as co-counsel with Michael O'Hara. However, on April 18, 2017, Fields filed a Motion to Withdraw as Plaintiff's attorney (Doc. # 24), which Magistrate Judge Wehrman granted. (Doc. # 26). Subsequently, Michael O'Hara has been Plaintiff's only counsel.

[2] In both her Response to Defendants' Motion to Enforce Settlement (Doc. # 34) and her own Motion for a Hearing or Oral Argument Regarding Motion to Enforce Settlement (Doc. # 36), Plaintiff argues that an evidentiary hearing is necessary so that Plaintiff can fully explain herself

**III. ANALYSIS**

**A. Need for an Evidentiary Hearing**

Plaintiff has requested an evidentiary hearing (Doc. # 36) on Defendants' pending Motion to Enforce Settlement (Doc. # 27) pursuant to Kentucky Federal Court Rule 7.1(f), which permits parties to request oral argument in a motion. Plaintiff alternatively claims that oral argument is needed to resolve the factual dispute as to whether she knowingly and voluntarily accepted the settlement agreement. (Doc. # 36 at 1). Because the Court finds that the parties' agreement contains no factual dispute, Plaintiff's Motion for a Hearing or Oral Argument Regarding Motion to Enforce Settlement is **denied**.

While the Court has the power to summarily enforce settlement agreements, it is customary to grant a party's request for an evidentiary hearing if there is a substantial factual dispute. *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976); *see also Noga v. Parts Assocs., Inc.*, No. 98-3789, 2000 WL 178385 at *2 (6th Cir. Feb. 8, 2000). "However, no evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001). Thus, to determine whether Plaintiff's request for an evidentiary hearing should be granted, the court must first determine whether the parties' settlement agreement was unambiguous or whether a substantial factual dispute remains.

Because settlement agreements are a form of contract, they are subject to the substantive contract law of the forum state. *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992); *see also Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479,

---

while relieving her counsel of the constraints of attorney-client privilege. However, this does not change the legal analysis as to whether there is a need for an evidentiary hearing.

487 (6th Cir. 1973); *Edwards v. Hocking Valley Cmty. Hosp.*, 87 F. App'x 542, 550 (6th Cir. 2004); *Smith v. ABN AMRO Mortg. Grp. Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011). Under Kentucky law,³ settlement agreements must satisfy "the requirements associated with contracts generally, *i.e.*, offer and acceptance, full and complete terms, and consideration." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. Ct. App. 2002). If the parties agree on all the essential terms, then the settlement agreement is enforceable even if it has not been formally signed. *RE/MAX*, 271 F.3d at 646.

The "interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *Hazard Coal Corp. V. Knight*, 325 S.W.3d 290, 298 (Ky. 2010) (quoting *First Commonwealth Bank of Prestonburg v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000)). The primary objective when interpreting a contract is to determine the intent of the parties. *3D Enters. Contracting Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005). If the language of the agreement is ambiguous, then the court will determine the intention of the parties by looking at both the language of the agreement and extrinsic evidence such as "the situation of the parties and the conditions under which the contract was written." *Fear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (citations omitted). However, if there is no ambiguity, "a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and

---

³ Although the parties do not address the choice-of-law issue in their briefs, they apparently all believe that Kentucky law applies, and the Court agrees. In a contract dispute, Kentucky courts apply Kentucky law when "there are sufficient contacts and no overwhelming interests to the contrary. . . ." *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983) (citing *Breeding v. Mass. Indemnity and Life Ins. Co.*, 633 S.W.2d 717 (Ky. 1982)). Here, there are sufficient contacts with Kentucky and no strong reason why the law of another state should apply. At all times relevant to this action, every party has been a citizen of Kentucky, and all the events giving rise to this action occurred in Kentucky. (Doc. # 1 at 2).

without resort to extrinsic evidence." *Id.* (citations omitted); *see also 3D Enters. Contracting*, 174 S.W.3d at 178; *Cantrell*, 94 S.W.3d 381 at 385. "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell*, 94 S.W.3d at 385 (citations omitted); *see also Transp. Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. Ct. App. 1994).

Here, the language of the settlement agreement could not be more unambiguous. A reasonable person is unlikely to find that the language of the e-mail exchange is open to multiple or inconsistent interpretations. The e-mail sent by Plaintiff's counsel plainly states that the e-mail "is to confirm our settlement" and goes on to define the essential terms of the settlement agreement including how much money Plaintiff will receive, how much money Defendants will pay in fees and costs, and whether the agreement includes a confidentiality provision. (Doc. # 27 at Exhibit A). Defendants' response is equally clear, accepting the Plaintiff's proposal and offering to take the next steps to formalize the agreement. *Id.* Based on the March 23, 2017 e-mail exchange, both parties intended to enter into a settlement agreement.

Because the language of the agreement is not subject to multiple interpretations, there is no need to look beyond the four corners of the agreement. Based on the language of the e-mail exchange, no substantial factual disputes remain. As such, there is no need for an evidentiary hearing. For the reasons herein stated, Plaintiff's Motion for a Hearing or Oral Argument Regarding Motion to Enforce Settlement is **denied**.

### B. Motion to Enforce Settlement

Because there is no need to conduct an oral argument, the Court may also rule on Defendants' Motion to Enforce Settlement. Courts favor enforcing settlement agreements

"whenever equitable and policy considerations so permit." *Aro Corp.*, 531 F.2d at 1372. Therefore, "[s]ummary enforcement of a settlement agreement for which there is no dispute as to the terms of the agreement is the only appropriate judicial response, absent proof of fraud or duress." *RE/MAX*, 271 F.3d at 650. As described above, the March 23, 2017 e-mail exchange created an unambiguous settlement agreement between Plaintiff and Defendants. Plaintiff brings no allegation of fraud or duress, merely that she "felt pressured and did not believe she would be committed to a settlement until she signed an agreement." (Doc. # 36 at 2). Neither feeling pressured nor being ignorant of the established legal doctrine qualifies as fraud or duress. Thus, the parties are bound by their agreement.

**IV.    CONCLUSION**

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

1. Plaintiff Deborah Meadow's Motion For a Hearing or Oral Argument Regarding Motion to Enforce Settlement (Doc. # 36) is **DENIED**;

2. Defendants' Motion to Enforce Settlement (Doc. # 27) is **GRANTED**; and

3. This matter is **dismissed as settled and stricken from the docket**.

This 3rd day of July, 2017.



Signed By:
*David L. Bunning*   DB
United States District Judge

k:\data\orders\cov15\15-061 meadows moo.docx